## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **Sami Aboukheir**, | |
| Plaintiff, | |
| v. | Case No. |
| **Gloria Bello Bassey, Blackspur Logistics, Inc., Martin Ezewiwe, William Turner, Felixing Motorspot LLC, Globel International LLC**, **Obinna Achowu, Kacon Global Services LLC, Xtreme Performance Solution LLC, Kessin Ruxton, Jamon Lukuko, and other unknown persons and entities**, | |
| Defendants. | |

## COMPLAINT

Sami Aboukheir ("Plaintiff") for his Complaint against Gloria Bello Bassey, Blackspur Logistics, Inc., Martin Ezewiwe, Globel International LLC, Obinna C. Achowu, Kacon Global Services LLC, Xtreme Performance Solution LLC, Kessin Ruxton, Jamon Lukuko, and other unknown persons and entities (sometimes collectively, the "Defendants"), states as follows:

{00161437}

## NATURE OF THE CASE

1.    In extreme physical pain and distraught from a debilitating injury, the Plaintiff became the unwitting victim of a fraudulent check-floating scheme.

2.    Unknown individuals saw the GoFundMe campaign that the Plaintiff's son set up on the Plaintiff's behalf. They reached out to the Plaintiff and convinced him that they were going to offer direct financial assistance.

3.    The perpetrators of this scheme opened accounts at Quontic Bank in the name of "Sami H. Abukheir."

4.    They deceived Quontic Bank and Plaintiff into believing there were funds available to draw from the account by tendering false checks for deposit to Quontic Bank.  Before these opening checks were dishonored, however, Defendants and their confederates persuaded the Plaintiff through false representations to transfer funds from the Quontic accounts to his own account at First Midwest Bank, with an account number ending in x5044 ("the FMB Account").

5.    The FMB Account was owned by the Plaintiff and his wife, Suzzanne Aboukheir.

6.    The unknown perpetrators subsequently directed the Plaintiff to wire funds from the FMB Account to an array of other bank accounts at other banks.

7.    Some or all of the named Defendants in this matter own, or control, the bank accounts that received transfers from the FMB Account.

8.    The payments that initially funded the Quontic Bank accounts were dishonored, and ultimately caused First Midwest Bank to charge the wire transfers that the Plaintiff had sent against other funds in the Plaintiff's accounts.

9.    On February 16, 2021, prior to the commencement of this fraudulent scheme, the FMB Account had a balance of approximately $85,597.20, all of which was the Plaintiff's money before this situation commenced; the vast majority was comprised of settlement proceeds from his personal injury claim.

10.    By March 19, 2021, the FMB Account was significantly overdrawn.

11.    Furthermore, to satisfy its claim against him, FMB set off a savings account with no less than $82,000.86.

12.    The identity of other perpetrators of the fraud will be ascertained.

13.    The Plaintiff seeks financial recompense from the Defendants and their co-conspirators. The Plaintiff alleges that treble damages under RICO statutes would be appropriate.

**PARTIES**

14.     Plaintiff Sami Aboukheir is an individual who lives in Will County, Illinois. He is a citizen of Illinois.

15.     Martin Ezewiwe is the owner of Blackspur Logistics Inc. Upon information and belief, his address is 3104 Andora Trail Sw, Marietta, GA 30064. Upon information and belief, he is a citizen of Georgia.

16.     Blackspur Logistics Inc is a corporation organized under the laws of the state of Georgia, with a registered business address of 3104 Andora Trail Sw, Marietta, GA 30064. Its taxpayer ID number is 45-3727153. Upon information and belief, it is a citizen of Georgia.

17.     William Turner is the registered agent of Felixing Motorspot LLC. Upon information and belief, he is a citizen of Georgia.

18.     Felixing Motorspot LLC is a limited liability company incorporated under the laws of the state of Georgia, with a registered business address of 2651 Shadowbrook Dr., Decatur, GA 30034. Upon information and belief, it is a citizen of Georgia.

19.     Gloria Bello Bassey is a member of Globel International LLC. Upon information and belief, she is a citizen of Georgia.

20.     Globel International LLC is a limited liability company incorporated under the laws of the state of Georgia, with a registered business address of 1820 Parkades Path SW, Marietta, GA 30008. Its

taxpayer ID number is 81-5365982. Upon information and belief, it is a citizen of Georgia.

21. Idongesit Andrew Awak is a member of Xtreme Performance Solution LLC. Upon information and belief, he is a citizen of Georgia.

22. Xtreme Performance Solution LLC is a limited liability company incorporated under the laws of the state of Georgia, with a registered business address of 3833 Peachtree Road NE, Apt. 909, Brookhaven, GA 30319. Its taxpayer ID number is 85-1392674. Upon information and belief, it is a citizen of Georgia.

23. Obinna Achowu is a member of Kacon Global Services, LLC. Upon information and belief, she is a citizen of Maryland.

24. Kacon Global Services, LLC is a limited liability company incorporated under the laws of the state of Maryland, with a registered business address of 12121 Dove Circle, Laurel, MD 20708. Upon information and belief, it is a citizen of Georgia.

25. The Plaintiff believes that Kessin Ruxton and Jamon Lukuko are pseudonyms – fictitious names – used by one or more perpetrators of the scheme detailed herein; investigation continues.

26. The Plaintiff expects to amend his complaint to name and seek recovery against other perpetrators to the scheme at issue.

## JURISDICTION AND VENUE

27.     This action gives rise to both diversity jurisdiction pursuant to 28 U.S.C. 1332, and federal question jurisdiction pursuant to 28 U.S.C. 1331.

28.     The Court has diversity jurisdiction under 28 U.S.C. 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the Plaintiff is a citizen of a different state than all Defendants.

29.     This Court has subject matter jurisdiction under 28 U.S.C. 1331 because this action asserts claims arising under federal law, including the Wire Fraud statute (18 U.S.C. 1343) and the Racketeer Influenced and Corrupt Organizations Statute (18 U.S.C. 1961, et seq).

30.     Venue is proper in this district under 28 U.S.C. 1391(b) because this is the judicial district in which a substantial part of the events giving rise to the Plaintiff's claims occurred.

## FACTS COMMON TO ALL COUNTS

31.     In approximately May of 2016, the Plaintiff went to Silver Cross Hospital, of New Lenox, IL, with pain and swelling in his left leg.

32.     He went to the emergency room, and they determined that his pain and swelling was caused by a blood clot. Silver Cross provided him Eliquis, a blood thinner, and discharged him.

33.     After being sent home, the Plaintiff's bowels and bladder stopped functioning. He returned to the hospital and was admitted while the hospital investigated.

34.     While he was admitted, the Plaintiff suffered a spinal stroke.

35.     Silver Cross performed surgery to release pressure on his spine.

36.     On May 10, 2016, the Plaintiff lost the ability to walk, and he is unable to do so, to this day.

37.     In 2016, the Plaintiff's son set up a GoFundMe fundraiser to assist his father and their family.

38.     In 2017, the Plaintiff brought suit against Silver Cross Hospital and related parties, commencing *Aboukheir v. Silver Cross, et al.*, case 17-L-724 at the Circuit Court of Will County, Illinois.

39.     Plaintiff's suit against Silver Cross Hospital settled on or about October 1, 2020, and the Plaintiff received $135,000.00 in settlement.

40.     The Plaintiff's health problems persist to this day.

41.     Still distraught and reeling, in October of 2020, the Plaintiff received correspondence from an individuals holding themselves out as Kesson Ruxton and Rev. Jamon Lukuko, agents for Jane Heather, a (putative) wealthy Ivorian who encountered the GoFundMe campaign, and who was taken by the Plaintiff's plight.

42.     The Plaintiff was advised that Heather would be making a gift to support the Plaintiff and to facilitate his long-term well-being, and

facilitate charitable endeavors, and that the government of the Ivory Coast had approved the international transfer of $10,200,000.00 to this end.

43.    On or about January 7, 2021, members of the enterprise opened accounts at Quontic Bank with account numbers ending in x9809, x2217, and x3107 (the Quontic Accounts").

44.    Immediately thereafter, Ruxton and Lukuko directed Plaintiff on to transfer funds from the Quontic Bank accounts to the FMB Account.

45.    These transfers were periodic; on January 19, 2021, the Plaintiff transferred $47,700.00. On January 27, the Plaintiff transferred $32,200.00. On February 5, the Plaintiff transferred $85,000.00.

46.    From there, Ruxton and the others directed the plaintiff to issue wire transfers from the FMB Account to other entities that Defendants controlled.

47.    The Plaintiff was directed to issue these wire transfers during the "float period," when funds are available to users in the receiving account but before the funds are actually received by the receiving bank.

48.    Funds sent via wire transfer are immediately deducted from the sending account and are immediately available in the receiving account, and cannot be "returned" to the financial institution from which they originated.

49.    On or about January 29, 2021, the Plaintiff was induced by Ruxton to transfer $29,700.00 from his FMB Account to an account at JP

Morgan Chase Bank, N.A., in the name of Globel International LLC, with an account number ending in x7696. Plaintiff was induced to make this transfer based on the false representation by Ruxton that the recipient of the transfer was a legitimate business that assist with his and his family's medical needs in exchange for the $29,700.00.

50.    On or about February 9, 2021, the Plaintiff was induced by Ruxton to transfer $65,700.00 from his FMB Account to an account at PNC Bank, N.A., in the name of Kagon Global Services LLC (it's actually incorporated as "Kacon Global Services LLC," under the laws of Georgia, as noted *passim*), which has an account number ending in x3667.  Plaintiff was induced to make this transfer based on the false representation by Ruxton, that the recipient of the transfer was a legitimate business that would, again, assist with his and his family's medical needs in exchange for the $65,700.00.

51.    On or about February 16, 2021, the Plaintiff was induced by Ruxton to transfer $13,000.00 from his FMB Account to an account at Woodforest National Bank, in the name of Blackspur Logistics, Inc., which has an account number ending in x8064.  Plaintiff was induced to make this transfer based on the false representation by Ruxton, that the recipient of the transfer was a legitimate business that would provide medical equipment in exchange for the $13,000.00.

52.   On or about February 19, 2021, the Plaintiff was induced by Ruxton to transfer $13,100.00 from his FMB Account to an account at Bank of America, N.A., in the name of Felixing Motorsport LLC (indeed, it's actually incorporated as "Felixing Motorspot LLC," under the laws of Georgia, as noted passim), with an account number ending in x9870. Plaintiff was induced to make this transfer based on the false representation by Ruxton, that the recipient of the transfer was a legitimate business that would ship to plaintiff a motorized wheelchair in exchange for the $13,100.00.

53.   On or about February 22, 2021, the Plaintiff was induced by Ruxton to transfer $28,300.00. from his account to an account at Chase Bank, N.A., in the name of Xtreme Performance Solutions, Inc., with an account number ending in x7979.  Plaintiff was induced to make this transfer based on the false representation by Ruxton that the recipient of the transfer was a legitimate business that would provide an accessible automobile, in exchange for the $28,300.00.

54.   In March of 2021, First Midwest Bank registered the transfers made by the Plaintiff as "chargebacks" and the Plaintiff's checking account became overdrawn in the amount of $172,414.83.

55.   On March 24, 2021, the Plaintiff received his monthly Social Security award of $2,110.10. On March 30, 2021, the Plaintiff received his

State of Illinois tax refund, of $159.00. These were applied to the overdrawn account.

56.  On April 12, 2021, First Midwest Bank set off the $82,000.86 in the Plaintiff's savings account.

57.  When First Midwest Bank closed the FMB Account, it was negative $87,955.87.

58.  The Plaintiff, by way of his communications with Ruxton and Lukuko, expressed concerns about the overdrafting of his account, and demanded to be made whole.

59.  These demands were ignored.

60.  At the Circuit Court of Cook County, Illinois, the Plaintiff brought a petition to compel discovery against the recipient banks, pursuant to Illinois Supreme Court Rule 224 (commencing matter number 22-L-08339 in that Court).

61.  The petition was granted and the Plaintiff was able to obtain signature cards and personal information about the individuals who opened the recipient accounts, by way of discovery from the responsive banks

## COUNT 1 – FRAUD

62.  The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this Complaint.

63.  On or about each of January 29, 2021, February 9, 2021, February 16, 2021, and February 22, 2021, Ruxton sent an email to

Plaintiff. In that email, Ruxton represented that the recipients of funds would assist the Plaintiff in various ways.

64.     On or about January 7, 2021, Ruxton caused Quontic Bank to open its accounts, and stated in writing that these accounts were in the available for Plaintiff to use as part of his efforts to survive the devastating events that caused him to lose the ability to walk and to undergo severe pain.

65.     The Defendants, and other unknown parties, made false representations of material fact to the Plaintiff, including but not limited to the following: That Heather had opened and funded accounts at Quontic Bank for the Plaintiff's benefit, and that the wire transfers at issue were to purchase mobility aids, a motorized vehicle, medical care, and other goods for the Plaintiff's well-being.

66.     The Defendants made these representations with no intention of benefiting the Plaintiff, or providing him anything.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $85,597.20, plus costs, interest, attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT 2 – WIRE FRAUD

67.    The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

68.    Under 18 U.S.C. 1343, a party commits wire fraud where they "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire… in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

69.    The Defendants willfully and knowingly participated in a scheme to defraud the Plaintiff, with intent to deceive him.

70.    By causing the Plaintiff to direct First Midwest Bank to wire funds to their bank accounts, the Defendants caused their scheme or artifice to be conducted via telephony or other electronic means.

71.    Defendants committed wire fraud by obtaining the funds in the Plaintiff's First Midwest Bank account by means of false or fraudulent pretenses and intentional misrepresentation.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $85,597.20, plus costs, interest,

attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT 3 – CONSPIRACY TO COMMIT WIRE FRAUD

72.    The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

73.    Under 18 U.S.C. 1349, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

74.    Upon information and belief, all Defendants participated in this fraudulent scheme because the same individuals directed the Plaintiff to wire funds to all defendants.

75.    If any Defendants are found not to have committed wire fraud, they are subject to the same penalties as those having actually committed wire fraud by means of attempt and/or conspiracy.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $85,597.20, plus costs, interest, attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT 4 – RACKETEERING

76.    The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

77.    Wire fraud under section 1343 constitutes "racketeering activity" under 18 U.S.C. 1961(1)(B), which is unlawful under 18 U.S.C. 1962(c).

78.    Under 18 U.S.C. 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"

79.    Section 1964(c) provides that "[a]ny person injured… by reason of a violation of [18 U.S.C. 1962] may sue therefore in any appropriate United States district court and shall receive threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"

80.    The Defendants, the individuals known as Ruxton and Lukuko, and other unknown individuals constitute a racketeering enterprise.

81.    As a result of Defendants' fraud and wire fraud, the Plaintiff is entitled to recover threefold his actual damages, plus the costs of bringing suit, including reasonable attorney's fees.

82.    Defendants committed wire fraud by obtaining the funds in the Plaintiff's First Midwest Bank account by means of false or fraudulent pretenses and intentional misrepresentation.

83.     Moreover, the Defendants, in causing the Quontic accounts to be opened and funded with fictitious money, were engaged in a recognizable scheme formed with the intent to defraud a financial institution, that is, bank fraud under 18 U.S.C. 1344.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $256,791.60, plus costs, interest, attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT 5 – CIVIL CONSPIRACY

84.     The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

85.     Defendants conspired to obtain access to the Plaintiff's funds in his bank account, through intentional misrepresentations to the Plaintiff.

86.     The Defendants constitute a combination of two or more persons acting in concert to perpetuate their fraudulent scheme.

87.     Defendants' conspiracy includes unlawful acts, including, but not limited to, intentional misrepresentations, fraud, and wire fraud.

88.     A principal element of the Defendants' conspiracy was injury and harm to the Plaintiff evidenced by their knowing and intentional false representations of material facts, such as that Heather had opened and funded accounts at Quontic Bank for the Plaintiff's benefit, and that the

wire transfers at issue were to purchase mobility aids and other goods for the Plaintiff's well-being.

89.    Defendants' overt acts in making intentional misrepresentations to the Plaintiff and committing, or conspiring to commit, wire fraud and fraud resulted in damages to the Plaintiff.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $85,597.20, plus costs, interest, attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT 6 – CONVERSION

90.    The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

91.    Defendants obtained funds belonging to the Plaintiff.

92.    The Plaintiff has an absolute and unconditional right to the immediate return of the funds.

93.    Defendants have wrongfully assumed control, dominion, or ownership of the Plaintiff's identifiable property.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $85,597.20, plus costs, interest,

attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

### COUNT 7 – UNJUST ENRICHMENT

94.     The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

95.     The Defendants made false representations regarding their intent to provide the Plaintiff with mobility aids, funds for his benefit, their financial status, and related matters.

96.     These false representations caused the Plaintiff to take steps to wire funds to the Defendants.

97.     The Defendants knew that their "funding" of the Quontic Bank accounts was insufficient, and would ultimately be dishonored.

98.     The Defendants, in inducing the Plaintiff to move (nonexistent) funds from the Quontic Bank accounts to his account at First Midwest Bank, and thereafter inducing him to transfer funds from First Midwest Bank to them, caused the Plaintiff's First Midwest Bank account to diminish in value.

99.     The Defendants' receipt and retention of the funds violates the fundamental principles of justice and equity.

100.    The Defendants will be unjustly enriched at the Plaintiff's expense if allowed to retain the benefit of the funds they were wired, and

therefore, the Plaintiff is entitled to full restitution of the value of that benefit.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands judgment in his favor and against the defendants, jointly and severally, in an amount no less than $85,597.20, plus costs, interest, attorneys' fees, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT 8 – IMPOSITION OF CONSTRUCTIVE TRUST

101. The Plaintiff repeats and incorporates by reference all of the prior paragraphs of this complaint.

102. By and through the Defendant's actions, assets of the Plainitiff were wrongfully transferred to the Defendant.

103. Given the circumstances, the immediate imposition of a constructive trust over the transferee bank accounts would be appropriate to ensure that assets are available to satisfy the Plaintiff's claims.

WHEREFORE, the Plaintiff, Sami Aboukheir, respectfully demands an accounting of all funds in (a) the JPMorgan Chase Bank, N.A. account in the name of Globel International LLC, with an account number ending in x7696, (b) the PNC Bank, N.A. account in the name of Kacon Global Services, LLC with an account number ending in x3667, (c) the Woodforst National Bank account in the name of Blackspur Logistics, Inc., which has an account number ending in x8064, (d) the Bank of America, N.A. account

in the name of Felixing Motorsport LLC, with an account number ending in

x9870, and (e) the JPMorgan Chase Bank, N.A. account in the name of

Xtreme Performance Solutions, Inc, with an account number ending in

x7979, and an order imposing a constructive trust on these accounts,

without bond, for the benefit of the Plaintiff, plus costs, interest, attorneys'

fees, punitive damages, and such other relief as this Court may deem just

and proper.

Dated: October 18, 2023                     Respectfully submitted,

**Sami Aboukheir,**

By: /s/ Justin R. Storer
One of His Attorneys

William J. Factor (ARDC 6205675)
Justin R. Storer (ARDC 6293889)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:　　(847) 373-7226
Fax:　　(847) 574-8233
E-mail: jstorer@wfactorlaw.com

## **VERIFICATION**

I verify under penalty of perjury that the foregoing is true and correct.
Executed on October 18, 2023.

Sami Aboukheir